## CAMPBELL v. THE MAYOR, etc., OF NEW YORK.

*(Circuit Court, S. D. New York. November 9, 1881.)*

1. LETTERS PATENT—STEAM FIRE-ENGINE PUMPS.

Letters patent No. 42,920, dated May 24, 1864, and issued to James Knibbs, assignor, for an improvement in steam fire-engine pumps, consisting in the use, in combination with the constant power of the engine to discharge a greater or less number of streams of water, and the same number through longer or shorter lengths of hose, of a passage from the discharge to the suction side of the pump, regulated by a valve, were not anticipated by the engines made by the Amoskeag Manufacturing Company, the engine made by Reaney, Neafie & Co., nor by the patents either of R. A. Wilder, of Joseph Bramah, or of Benoit Duportail.

2. SUITS TO DEFEAT A PATENT—MEASURE OF PROOF.

To defeat a patent the proof must be clear, beyond any fair and reasonable doubt.

3. PUBLIC USE OR SALE.

It must be a public sale or use with the consent or allowance of the inventor, that will invalidate a patent.

In Equity.

*George H. Williams,* for plaintiff.

*Frederic H. Betts* and *Wyllis C. Betts,* for defendant.

WHEELER, D. J. The plaintiff has title to letters patent No. 42,920, dated May 24, 1864, and issued to James Knibbs, assignor, for an improvement in steam fire-engine pumps, whereby such an engine, having constant power for discharging several streams of water through lines of hose of various lengths, may be made to throw fewer streams, or the same number through longer lines when the resistance to discharge would be greater, without varying the power, or causing undue strain upon the working parts or hose, by means of a passage from the discharge to the suction side of the pump, regulated by a valve, for the surplus water on the discharge side caused by the restriction upon the discharge. This suit is brought for an infringement of this patent, which is not denied, if the patent is valid. The validity of the patent is questioned upon the ground that Knibbs was not the first inventor of this improvement; that the same had been patented abroad prior to his invention; and that the same had been

in public use and on sale in this country for more than two years prior to his application. The anticipations relied upon are steam fire-engines which were made by the Amoskeag Manufacturing Company, of Manchester, New Hampshire, the steam fire-engine Philadelphia, which was made by Reaney, Neafie & Co., of Philadelphia, and the patent of R. A. Wilder, No. 27,662, dated March 27, 1860. The foreign patents are the English one of Joseph Bramah, No. 1,948, dated April 19, 1793, and the French one to Benoit Duportail, No. 19,532, dated June 12, 1857. The facts as to the existence, knowledge of, and use of the devices in these fire-engines are to be found from a comparatively large mass of evidence, consisting of documents, drawings, pictures, and the somewhat conflicting testimony of numerous witnesses as to various facts and circumstances. Upon the whole, after much examination and consideration, it satisfactorily, and beyond any fair doubt, appears that, prior to the invention of Knibbs, the Amoskeag Manufacturing Company made and put into rotary steam fire-engines manufactured by them a passage for water leading from the suction to the discharge side of the engines, which could be opened and closed by a valve, for the purpose of having water carried through it, and past the pumping apparatus, and discharged through the hose by hydrant pressure, when the pumps were not operating, which was used at places where there was hydrant pressure for that purpose; and that Reaney, Neafie & Co. made and put into steam piston fire-engines, tubes leading from the suction and discharge parts of the engine toward each other until they met, and in one tube, from the place of meeting to the boiler, which could be opened and closed by valves, one in each branch, for the purpose of taking water from either the suction or discharge side into the boiler,—the two branches leading from the suction and discharge sides constituting a passage controlled by two valves, through which water could be taken from the discharge to the suction side to relieve pressure on the discharge side; but it does not appear by that measure of clear proof, beyond any fair and reasonable doubt, which is necessary to defeat a patent, that either of these devices was ever, before that time, used for the purpose of passing water from the discharge to the suction side of the engines to relieve undue pressure on the discharge side, caused by reducing the number of discharge openings, or increasing the difficulties of discharge by lengthening the hose; nor that the utility of these passage-ways for that purpose was before that time known; neither does it at all appear that Knibbs derived any aid from either of these devices. The counsel for the

defendant, after insisting strenuously that the passages were in fact used for the purposes of Knibbs' invention, likewise insist that in view of the existence of these things, if that only should be found, Knibbs only put an old device to a new use, which would not be patentable. This presents the question, on this part of the case, whether such prior knowledge and use of a like device, as is found to have been had, will defeat the patent. His invention was not to be used under all circumstances of the use of the engine. It was for use only in combination with the constant power for a larger discharge, and a restricted discharge.

The second claim of the patent, and the only one in controversy, is for the connecting passage and valve for the purposes described and set forth, the principal of which purposes was the use in that combination. The statutes providing for defences to suits upon patents require defendants to set forth the names and residences of persons having prior knowledge of the thing patented, and where and by whom it had been used. Rev. St. § 4920. The proof must, of course, correspond with and support these allegations. The proofs in this case do not support the allegation that the persons knowing of and using the Amoskeag engines and the engine Philadelphia, as these persons are found to have known and used them, knew of and used Knibbs' invention. Those connected with the Amoskeag engines used the passage to avoid the pump, and those connected with the Philadelphia used only a part of it at a time, and then in connection only with contrivances for feeding the boiler, and neither of them used it in connection and combination with the working pump and over-pressed hose at all; and they respectively had knowledge coextensive with the use they made. They had brought together all the parts necessary to accomplish the result he accomplished, but did not know how to use them. This is not the known use required to defeat a patent. *Tilghman* v. *Proctor*, 102 U. S. 707.

Wilder's patent is for a two-way valve in combination with apparatus for feeding a steam-boiler with water, by which surplus water is returned to the tank. The combination with which it is made to work is entirely different from that in which this passage and valve are placed, and the working parts are not the same. The same may be said of the patents of Bramah and Duportail. Both were before steam-fire engines, with the necessities of their great and constant motive power, were known.

The facts in regard to use and sale of the invention prior to the application appear, from the evidence, to be that Knibbs was the

engineer of a steam fire-engine in use in the city of Troy for the protection of property there against fire, and in the latter part of April, 1860, applied his invention in the form of a pipe leading from the discharge to the suction sides of the engine, with a globe valve between. The invention was tried and operated satisfactorily, except that he thought that the passage was rather small. This engine, which was called the Arba Reade, was continued in use with the invention upon it, Knibbs continuing to be the engineer. In January, 1862, the city of Troy procured another steam fire-engine, of substantially the same pattern, to which, at the request of Knibbs, his invention was applied in the form of an opening through the partition between the discharge and suction sides of the pump, with a valve working to a seal as the opening through which the excess of water could be made to pass. This engine, which was called the J. C. Osgood, was put to use for the city, and the invention operated satisfactorily to Knibbs, as well as to others concerned. The tube to the Arba Reade was made larger in February, 1863, and worked more satisfactorily to all. Knibbs thought of applying for a patent, consulted a solicitor of patents about it, and made application for the one that was granted May 13, 1864, without at any time intending to abandon his invention to the public. In 1861, and consequently more than two years before the application, the Amoskeag Manufacturing Company made other steam fire-engines containing this invention, which were sold and went into use, and from that time until after the application such engines were occasionally made and sold by the company, and perhaps by other manufacturers, and went into the customary use. This was done without the consent and allowance of Knibbs.

It is contended that these uses and sales, either those with or those without the consent and allowance of Knibbs, will defeat the patent. This invention, like that in *Elizabeth* v. *Pavement Co.* 97 U. S. 126, could not well be experimented with and tested in private. Its object was connected with purposes in their nature public, and its practice was necessarily somewhat of the same nature. The invention was not essentially varied by the trials and use made, and was patented according to its features as first applied. Still, it was, not clear to the inventor that no changes or modifications would be necessary, and necessary to be specified in the application for a patent, in order to obtain the full benefit of one. In this view the use by him as engineer, and by the city of Troy at his request, is deemed to have been experimental and allowable within the rule laid down in the case

cited. Still, if consent and allowance of the invention are not necessary to defeat a patent, the other sales and use were sufficient to accomplish that result.. It has frequently been said, but in cases where the point was not directly raised, that such consent and allowance was not necessary. *Egbert* v. *Lippmann*, 15 Blatchf. 295; *Kelleher* v. *Darling*, 14 O. G. 673. And there are cases the other way. *Andrews* v. *Carman*, 13 Blatchf. 307; *Draper* v. *Wattles*, 16 O. G. 639.

In view of these differences of opinion or statement, it may be well to recur to the statutes. In section 7 of the act of 1836 it is provided that the commissioner shall make, or cause to be made, an examination of the alleged invention or discovery, and if it shall not appear, among other things, that it had been in public use or on sale with the applicant's consent or allowance prior to the application, and if the commissioners shall deem it to be sufficiently useful and important, it shall be his duty to issue a patent for it. In section 15 of the same act it is provided that a defendant in a suit for infringement may set up, among other things, in defence, that the invention had been in public use or on sale, with the consent and allowance of the patentee, before his application for a patent. These are the only provisions for preventing the issue of a patent, or a recovery for the infringement of one, on account of the invention being in public use or on sale, except some provisions as to the effect of foreign patents, not material to this question, which were in force when this patent was granted. The act of 1839 does not provide for preventing the issue of a patent on this account, and does not enlarge in any direction, but is restrictive of this defence. It saves to manufacturers and purchasers before the application for a patent the right to specific machines, manufactures, or compositions of matter, and provides that no patent shall be held invalid by reason of the sales, purchases, or use, except on proof of abandonment, or that the purchase, sale, or use has been for more than two years prior to the application. No purchase, sale, or use, after the invention, would prevent or invalidate a patent but for these provisions of the act of 1836, and it is against those provisions that the effect of the making, use, and sales of these specific articles is saved by the act of 1839. The use saved against is the public use mentioned in the act of 1836, as seems to have always been understood, although it is not mentioned as public in the act of 1839; and the being in use and on sale saved against are the public use and sale with the consent or allowance of the inventor mentioned in the act of 1836. *Draper* v. *Wattles*, 16 O. G. 639.

Upon these considerations there must be a decree for the plaintiff. The patent has expired, and therefore no injunction will be granted unless further moved for upon some special grounds. Let a decree be entered adjudging that the patent is valid and that the defendant has infringed, and for an account, according to the prayer of the bill, with costs.