## CAMPBELL *v*. CITY OF NEW YORK.

*(Circuit Court, S. D. New York.* July 10, 1888 )

1. PATENTS FOR INVENTIONS—PRIOR USE—ACTS OF 1836 AND 1839.

Act of 1836 cuts off all right to a patent if the invention has been in public use or on sale with the applicant's consent or allowance prior to the application. Act of 1839 gives to purchasers and makers of new inventions, before the application for a patent, the right to use and sell them without liability, provided that such purchase, sale, or use should not invalidate the patent unless it had been for more than two years prior to the application. *Held,* that letters patent No. 42,920, granted under these statutes to James Knibbs, for an improvement in fire-engines, were void, it appearing that such improvement had been used in an engine sold more than two years prior to the application, although without the consent or knowledge of the applicant; it also appearing that the maker of such engine had obtained his knowledge of the improvement by using it in experiments at the request of the applicant, the latter not enjoining secrecy, nor intimating that he intended to apply for a patent.

2. SAME—USE AS AN EXPERIMENT.

Under acts of 1836 and 1839, invalidating patents because of a public use or sale of the invention prior to the application for the patent, a patent is not invalidated by the fact that the invention was used and sold as an experiment and at the request of the applicant, prior to the application.

3. SAME—EXTENT OF ACT—USE OF IMPROVEMENTS.

Act of 1839, giving to makers and purchasers of newly-invented machines, manufactures, and compositions of matter before the application for a patent, the right to use, and to sell for use the specific things without liability, includes improvements upon machines, as well as those wholly new.

4. SAME—DATE OF APPLICATION.

An application for a patent dates from the time it is filed or otherwise made in the patent office, and not from the time of its execution.

5. SAME—PLEADING PRIOR USE—SURPLUSAGE.

On a bill for infringement of a patent granted under these statutes, *held* that, in an answer alleging that the patent is void because the invention, "with the knowledge, acquiescence, and consent of the inventor," had been in public use and on sale for more than two years before the application, the clause "with the knowledge, acquiescence, and consent of the inventor" is mere surplusage, and may be disregarded.

6. SAME—ACCOUNTING—REVERSAL OF DECREE—USE OF TESTIMONY TAKEN.

Where a decree directs an accounting, which is proceeded in at great expense, but before it is finished the decree is reversed on rehearing, the decree of reversal will be without prejudice to the use of the testimony taken in the accounting, in case another accounting shall be finally decreed.

In Equity. Bill for infringement of a patent. On rehearing. For former opinion, see 9 Fed. Rep. 500.

*Roger M. Sherman, Marcus P. Norton, Harvey D. Hadlock, William E. Hagan,* and *Horace G. Wood,* for plaintiff.

*Frederic H. Betts,* for defendant.

WHEELER, J. This suit is brought upon letters patent No. 42,920, granted to James Knibbs for an improvement in steam fire-engines, consisting of a relief valve. He was the engineer of a steam fire-engine. called the "Arba Reade," of the city of Troy, and made the invention, and applied it to that engine in 1860, and it was used on that engine as

occasion required afterwards. It operated well, but he thought that experience might suggest improvements. In 1861 the city of Troy ordered another engine, to be called the "J. C. Osgood" to be built for its use by the Amoskeag Manufacturing Company, of Manchester, N. H., and at the request of Knibbs this invention was put into it in a somewhat modified form, for which he furnished some rough drawings. That engine was completed and sent to Troy, where it arrived on January 14, 1862, and it was put to use January 27, 1862. The invention operated well on that engine, but he made some further changes up to February, 1863, when he became satisfied that the invention could not be further improved, and consulted counsel about applying for a patent for it. On April 27, 1864, an application was made and executed; on May 13th it was filed in the patent-office, and on May 24, 1864, the patent was granted. It was applied for and granted for the invention as first made, and did not cover any improvement made afterwards. This bill was brought for infringement of the patent in October, 1877. The answer alleged that the patent was void "because that the said alleged invention, with the knowledge, acquiescence, and consent of said inventor," had been in public use and on sale in this country for more than two years before the application for the patent, among other defenses. The answer was traversed, and proofs were taken, and the cause was heard in chief at February term, 1881. On the hearing, the Amoskeag Manufacturing Company appeared to have put the invention into other steam fire-engines made and sold more than two years prior to the application for the patent; but without the consent, acquiescence, allowance, or knowledge of the applicant. The patent was granted under the provisions in this respect of the acts of 1836 and 1839. The act of 1836 cut off all right to a patent if the invention had been in public use or on sale with the applicant's consent or allowance prior to the application. The act of 1839 gave to makers and purchasers of newly-invented machines, manufactures, or compositions of matter, before the application for a patent, the right to use, and to sell for use, the specific things, without liability; but provided that such purchase, sale, or use should not invalidate the patent unless it had been for more than two years prior to the application. This was understood to mean that if the purchase, sale, or use should amount to what under the act of 1836 would defeat a patent if it took place before the application, it should not have that effect unless it took place two years before the application. This would require that it should be a public use or a being on sale, with the applicant's consent or allowance, two years before the application. On this construction of the statutes the issue formed by the traverse of this part of the answer, as well as the other decisive issues in the case, was found for the plaintiff, and an accounting was ordered, which has been entered upon, and proceeded with at great expense, and is far from being completed.

Since the decision in *Andrews* v. *Hovey*, 123 U. S. 267, 8 Sup. Ct. Rep. 101, and 124 U. S. 694, 8 Sup. Ct. Rep. 676, holding that the appli-

cant's consent or allowance is not requisite, on motion of the defendant, a rehearing has been had. The orator insists that as the answer sets up public use and being on sale with the knowledge, consent, and acquiescence of the inventor the whole must be proved. The defendant claims that only enough of the answer to make out a good defense need be proved, but asks leave to amend if more is held to be necessary. If what is said about knowledge, consent, and acquiescence should be stricken out, a good answer would be left. It is wholly immaterial, and mere surplusage, although it appears to have been regarded as quite material when the answer was drawn. Mere surplusage in pleading may be wholly disregarded in evidence, both at common law and in equity. The answer and traverse appear to well raise the question now made. The evidence is all in, without objection on this account. This would be no waiver, however, for the evidence as to sale and use without consent would be equally admissible under either form of answer.

The orator insists further that the former finding in this respect, as stated in the opinion then filed, is not borne out by the evidence. 20 Blatchf. 67, 9 Fed. Rep. 500. In the view of the law then taken, this would not be decisive, and it might be considered with less pains than it would otherwise receive. It has now been reconsidered upon further argument. The evidence tends to show that several engines containing this invention, besides the J. C. Osgood, were made and sold by the Amoskeag Manufacturing Company after the invention was made known to them, and before May 13, 1862, the limit of the two years prior to the application. Some doubt, and perhaps a reasonable and fair doubt, is raised about all of those except the Governor Hill, sold and forwarded to the city of Concord, N. H., April 28, 1862. There is no evidence to which attention has been called about any use of this engine further than what may be implied from its purchase by that city. It was probably bought for the use for which cities ordinarily want such engines. Such use is so occasional that none may have been had prior to May 13th after its purchase. The sale only is to be considered. That was not till within the two years before the application was executed. The statute requires that it be more than two years prior to the application to defeat the patent. The orator argues that a sale not shown to have been two years prior to the execution and completion of the application as an instrument is not shown to have been two years prior to it. But the application is to be for a patent, and must be made to the patent-office, to be there acted upon, and such an application cannot justly be said to be so made to that office until that office is reached, and that cannot be done until the application is filed, or otherwise made there. This sale of the Governor Hill is therefore deemed to have been two years prior to the application. The sale and use of the J. C. Osgood were two years prior to the application beyond any question or suggestion; but that sale and use were so had at the request of the inventor, for the purposes of experiment, that they were not before, and are not now, understood to be within the statutes. They were in reality for and by

the inventor himself for the purposes of perfecting the invention, to which the statutes in this respect do not refer.  *Elizabeth* v. *Pavement Co.*, 97 U. S. 126.  This question must turn, therefore, upon the sale of the Governor Hill alone.  The act of 1839 says nothing about public use or being on sale.  It refers to individual manufacture, and use, and sale for use, of specific things, and saves the patent therefrom, except "that such purchase, sale, or prior use has been for more than two years prior to such application for a patent."  Neither the public character of the use, nor the being on sale in the sense of being kept ready for sale, of the act of 1836, is carried into the act of 1839, any more than the consent and allowance of the applicant are.  The construction established by *Andrews* v. *Hovey* seems to be that the act of 1839, by declaring that no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application, except on proof that such purchase, sale, or prior use has been for more than two years prior to the application, impliedly declares that the same within the two years shall not be held to defeat the patent.  The wells put down by others, which defeated the driven-well patent in *Andrews* v. *Hovey*, were individual wells put down from time to time.  There were several of them, but no stress was laid upon the number.  Mr. Justice BLATCHFORD said, in delivering the opinion of the court, (124 U. S. 709, 8 Sup. Ct. Rep. 680, 681:)

"The first clause of the seventh section of the act of 1839 gave to the persons for whom those wells were constructed a right to use them without the consent of Green, and the second clause of that section had the effect to make Green's patent invalid, because of the use of the invention by those persons more than two years before he applied for his patent."

The statute makes no distinction upon the source or means of obtaining knowledge by which the thing is constructed more than two years prior to the application.  In *Kendall* v. *Winsor*, 21 How. 322, the question arose between the inventor and constructors of machines prior to the application by means of knowledge of the invention surreptitiously obtained, and it seems to have been held that the act of 1839 gave no right to use machines so got up.  Under the construction now put upon the statute, if the right to use the machines had existed, their use would appear to have been sufficient to overthrow the patent.  This distinction between an honest and a piratical construction, purchase, or use, more than two years before the application, as affecting the validity of the patent, appears to be recognized in *Andrews* v. *Hovey* in referring to *Kendall* v. *Winsor*.  Mr. Justice BLATCHFORD, as to that, said, (124 U. S. 708, 8 Sup. Ct. Rep. 680:)

"It may well be that a fraudulent, surreptitious, and piratical purchase or construction or use of an invention prior to the application for the patent would not affect the right of the patentee under either clause of the seventh section."

The orator argues that the construction and sale of the Governor Hill, so far as this invention was included, was of that character.  But there

was no injunction of secrecy on the part of the inventor, nor intimation that he intended to apply for a patent, so far as has been made to appear, when he made known the invention to the Amoskeag Manufacturing Company, and requested that it be put into the J. C. Osgood. Neither did he give any leave to apply it to other engines. He did not abandon his invention to the public; but the Governor Hill, embodying it, got built and sold, without anything which can be called fraudulent, surreptitious, or piratical with any good reason. Nothing about this appears to be any more dishonest than the putting in of the wells without the knowledge of the inventor, in *Andrews* v. *Hovey.* The sale was single, but was as extensive as the use that defeated the patent in *Egbert* v. *Lippmann,* 15 Blatchf. 295, 104 U. S. 333.

A further suggestion has been made that the act of 1839 does not mention, and therefore does not cover, improvements upon machines, manufactures, or compositions of matter, but only those wholly new. A machine with an improvement about it would, however, be an improved machine, and would appear to be included in the general term "machine," as used in this statute. In *Andrews* v. *Hovey* the point was made that the statute did not cover a patent for a process, because there was no word apt to include it; but that point was overruled. Upon the whole, in view of the construction put upon the statutes—on which the validity of this patent depends—in *Andrews* v. *Hovey,* the patent is invalid, and the bill should be now dismissed. *Spring* v. *Machine Co.,* 13 Fed. Rep. 446; *Drill Co.* v. *Machine Co.,* 22 Blatchf. 298, 21 Fed. Rep. 74; *Wooster* v. *Handy,* 22 Blatchf. 307, 21 Fed. Rep. 51; *Boring Co.* v. *Sheldon,* 23 Blatchf. 286, 24 Fed. Rep. 374, 25 Fed. Rep. 768, and 28 Fed. Rep. 217.

The plaintiff suggests that in any view the decree ought to stand until the accounting is completed, to save the expense of what has been done in case the decree should be finally upheld. If the expense of completing the accounting would be comparatively slight, or the law or the fact was in doubt, that course would seem to be prudent. There is no question, however, about the fact of this sale of the Governor Hill. It is proved by the testimony of both parties. There is contradiction about all the others, but as to this there is none. This does not seem to have been regarded as material when the testimony was taken; but the evidence was taken, and is in the record, and must have its due weight. It establishes this fact. Neither does there appear to be any question left open about the law. This point was fully decided in *Andrews* v. *Hovey,* in the circuit court, (16 Fed. Rep. 387,) and affirmed by the supreme court on appeal, (123 U. S. 267, 8 Sup. Ct. Rep. 101.) The decision against the patent has been adhered to on rehearing, on a most elaborate argument and comprehensive judgment. 124 U. S. 694, 8 Sup. Ct. Rep. 676. Nothing remains but to follow that decision. Still, as the principles of that decision may have been misapplied to this case, and a different result may be finally reached, it seems proper to save the expenses of the accounting already incurred to that end, so far as may be. For

that purpose the decree now made is to be upon the express condition that it is without prejudice to the use of the testimony before any master appointed to take an account in the cause, in case such account shall be finally decreed.   Let there be a decree dismissing the bill of complaint, with costs, but without prejudice to the right to use the testimony and evidence taken on the accounting on any other accounting which may be decreed.