## DALBY v. LYNES.

(Circuit Court, D. Massachusetts. July 12, 1894.)

No. 2,561.

1. PATENTS—DEFENSE OF PRIOR USE—EVIDENCE TO ESTABLISH.
Proof that certain articles anticipating the patent in every particular, and capable of practical use, were made for use as samples, *held* sufficient to establish the defense of prior use, although it was not shown that they ever became known to any others than the person who made them, his daughter, who helped finish them, and the person for whom they were made. Egbert v. Lippmann, 104 U. S. 333, followed.

2. SAME—DEFENSE OF PRIOR USE—BURDEN OF PROOF.

The burden of showing that a prior use set up by defendant was forgotten and abandoned before the invention made by the patentee, if competent, is upon the complainant.

3. SAME—INVENTION—KNIT GARMENTS.

There is no invention in applying to the making of undershirts a peculiar stitch and method of putting together, already well known in the making of Cardigan jackets.

4. SAME—LARGE SALES AS EVIDENCE OF INVENTION.

The fact that the patentee was the first to put upon the market articles made according to his specifications, and that they at once went into public favor, so that large quantities were sold, cannot be considered as evidence of patentable invention, except when the case is otherwise doubtful, nor unless enough is shown, in addition to the mere fact of extensive sales, to enable the court to judge whether they arose from the intrinsic nature of the alleged invention, or otherwise. Watson v. Stevens, 2 C. C. A. 500, 51 Fed. 757, followed.

5. SAME—PATENTABILITY.

The Dalby patent, No. 357,068, for improvements in undershirts or vests, *held* void as to the third claim because of prior use and for want of invention.

This was a suit in equity by Thomas Dalby against Alexander Lynes for alleged infringement of letters patent No. 357,068, issued February 1, 1887, to complainant, for "improvements in undershirts or vests." The invention is thus described in the specifications of the patent:

"This invention consists, primarily, in constructing undershirts or vests so that they shall be shaped or fashioned to the body without the employment of either a narrowing or a widening machine, or the cutting away of any portion of the fabric at the narrow portion of the body, or the cutting out of the shape. The body of the shirt or vest is knit so as to have the same ribbed structure throughout, except that the top and bottom portions are formed of half Cardigan, and the central or waist portion of Derby rib (or, as it is also termed, 'one-and-one rib'), whereby the requisite narrowing of the body is secured at the waist to conform to the shape of the body without necessitating the cutting away or cutting out of any portion of the fabric. Two connected parts thus formed, and constituting the back and front, respectively, of the shirt, are joined together by selvage edges. The invention further consists in forming the sleeves separately from the body, the wrist portion being formed of a Derby rib, while the arm portion is formed of half Cardigan, whereby the requisite width and elasticity is secured, the arm portion being secured to the body by stitching, without the intervention of gores or gussets, all as hereinafter described."

The third claim, which was mainly in issue, reads as follows:

"(3) An undershirt or vest having sleeves, the arm portions of which are formed of half Cardigan, and the wrist portions of Derby, or one-and-one, rib, the edges of each sleeve being united by a seam at *x*, and the arm portion stitched to the body of the garment, substantially as described."

The defenses mainly relied on were prior use and knowledge by others than the inventor, and want of invention. In respect to prior use and knowledge, there was testimony by one Charles Evans that in October, 1882, he made some children's shirts for Mr. William Carter, to be used as samples; that the cuffs of these shirts were made with a "one-and-one" stitch, and the sleeves with a "royal rib;" and that they were finished by his daughter, Mary A. Evans, who put some crochet work on the neck.

John L. S. Roberts, for complainant.
Fish, Richardson & Storrow, for defendant.

PUTNAM, Circuit Judge. The answer admits infringement of the third claim of the complainant's patent in the event it is found to be valid. It denies infringement of any other claim, and none such is proven. Therefore, it is conceded that the third claim is alone in issue. The larger portion of the evidence in this cause is directed at alleged prior use and knowledge by others than the inventor. The last affirmation of the rule of evidence touching this defense is in Morgan v. Daniels, 153 U. S. 120, 123, 14 Sup. Ct. 772, where it is applied to the effect of a decision of the commissioner of patents in a case of interference. It is, in substance, that the burden of proof rests on whomsoever sets up this defense, and that every reasonable doubt should be resolved against him. The supreme court seem to have thus laid down a rule touching the weight of evidence not known in the common law in civil causes, with one or two extreme exceptions. A practical illustration of its application is found in Coffin v. Ogden, 18 Wall. 120. Conceding that the prior matter was not embryotic nor inchoate, did not raise any speculation or experiment, and had reached consummation, the court held that prior knowledge and use by a single person was sufficient. This was under the act of 1836; but, so far as it touches the case at bar, we are not aware of any change in the law. Even with reference to public use, with the consent of the inventor, for more than two years prior to his application, the court held, in the well-known case of Egbert v. Lippmann, 104 U. S. 333, that use by a single person was sufficient, if under such circumstances that the knowledge of the use might have been communicated to others without violating any restriction imposed by the inventor; and this court, in Stitt v. Railroad Co., 22 Fed. 649, remarked (page 651) that it was not necessary that the prior matter should have been actually used for the purpose contemplated, although it must have been capable of such use. We are led to the conclusion that the manufacture of the samples by Evans for Carter meets clearly all the requirements of this defense, in the way in which they were practically understood in the cases referred to. One of the original samples is produced, and there cannot be the slightest doubt that they were made as early as October 31, 1882, and that they anticipated Dalby in every particular. Although they seem to have been used only as samples, and are not proven to have been known to others than Evans, who knit them, his daughter, who aided in finishing them, and Carter, for whom they were knit, yet they were capable of practical use, were complete in every particular, were in no sense experimental, except in the sense of being experimental because apparently they were not offered to the trade or accepted by it, and Carter was under no restriction whatever with reference to the sale, use, or other disposal of them. This defense seems to be fully maintained.

In Converse v. Matthews, 58 Fed. 246, this court said:

"There is no equity nor public policy which requires that one should be deprived of his just reward who revives a lost art, whether buried for ages or for only a few years, although with the latter there is, of course, more necessity for making sure that the revival was not suggested by the knowledge of what had apparently disappeared."

Although the statute, in legislating touching what was "not known or used by others in this country," contains no limitation of time, and might, so far as its letter is concerned, apply to what was known or used by others within any period whatever, yet it must yield to reason in this particular. Especially is this true with reference to the advance in mechanical arts, so rapid in this generation, as is illustrated by what we further said in Converse v. Matthews, ubi supra:

"With our rapid progress in mechanical improvements, what an ingenious man fails to accomplish to-day, with the appliances now at hand, another ingenious man may accomplish to-morrow, with the better appliances which he then finds; and, if the latter acts from his own resources, he is not to be deprived of the fruits of his ingenuity by reason of the prior failure of to-day, although, without taking into account the change in appliances, it may be difficult to understand why and wherein one failed and the other succeeded."

This question has been hinted at in the case at bar, but not so thoroughly presented as to enable the court to undertake to lay down any general rules touching it. It comes in answer to the defense of prior use or knowledge by others, and the burden to make out the circumstances supporting it rests on the inventor or complainant. So far as authorities go, the line of investigation in this direction is far from complete, and the authorities themselves are neither definite nor well sustained. In Gayler v. Wilder, 10 How. 477, relied on by the complainant, the instruction to the jury, which was sustained, was as follows:

"If Conner had not made his discovery public, but had used it simply for his own private purpose, and it had been finally forgotten or abandoned, such a discovery and use would be no obstacle to the taking out of a patent by Fitzgerald, or those claiming under him, if he be an original, though not the first, inventor or discoverer."

Even this expression was doubted in Coffin v. Ogden, ubi supra, 125. In The Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, and more particularly in Edison Electric Light Co. v. Beacon Vacuum Pump & Electrical Co., 54 Fed. 678, this question might well have been suggested, if it involved a rule of very extensive application; yet it was not. We make these observations in order that it may be understood that we do not go beyond what the case at bar necessarily demands of us; and for that reason all we need say is that whatever may have been the facts when Carter or Evans gave their depositions, in 1890, the complainant has failed to show that, within the language of Gayler v. Wilder, ubi supra, what was done by Carter and Evans in October, 1882, had been "finally forgotten or abandoned" in April, 1884, when it is conceded that Dalby was making shirts described in his specifications and claims.

There is, however, a more fundamental difficulty in the complainant's case. A novelty involving a state of art so universal and com-

mon as the making and adjustment of clothing must be of a radical character, to overcome the presumption against its patentability. This is well illustrated by the expressions and conclusions of the court in Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, where the alleged invention was stated as follows:

"A novel mode of constructing shoes and gaiters, whereby the ordinary elastic goring at the sides and the tedious lacing up at the front are both dispensed with, while at the same time the tops will expand to receive the foot, and fit neatly and closely around the ankle when the shoe is on, being also water-tight to the extreme top of the shoe."

The relations to the prior art and the claimed advantages appearing in that case are singularly like those in the case at bar; and yet the patent was held void for want of patentable novelty. A similar result was reached in Patent Clothing Co. v. Glover, 141 U. S. 560, 12 Sup. Ct. 79,—a case of an alleged improvement in goring pantaloons, somewhat more simple in its character than the claimed invention at bar, yet in its relations to the domestic arts substantially the same. Another somewhat analogous case is Cluett v. Claflin, 140 U. S. 180, 11 Sup. Ct. 725, involving an alleged improvement in adjusting the bosom of a shirt, by which, as in complainant's patent, the raw edges and loose threads would be avoided, and the bosom would be rendered firmer, and less likely to rumple or break. Every person owes something to his art, trade, or other occupation, which seems to be often forgotten when the fancy, tickled by what is new, too frequently elevates it to the importance of invention. Applying the common knowledge and common judgment which, in a case presented on bill, answer, and proofs, the court is entitled to apply, as a jury may, we are unable to see anything in this patent except "the natural outgrowth of the development of mechanical skill, as distinguished from invention." Burt v. Evory, 133 U. S. 358, 10 Sup. Ct. 394. It appears that the various stitches referred to in the patent had been well known for a long time, and that the half Cardigan stitch named in it was a modification of the Cardigan stitch, also well known. The complainant testified, on cross-examination, that prior to 1884—the year in which he claimed to have made his invention—he had known Cardigan jackets in which the arm portion of the sleeves was knit in the Cardigan stitch, and the wrist portion in the same stitch which his specifications prescribe; that in these jackets the sleeves were knit in a flat piece, and sewed together on their edges, and sewed to the body of the jacket; that except in the fineness of the gauge, and that the Cardigan stitch was used in lieu of the half Cardigan, there was no difference between the Cardigan jackets and the undershirts shown by Fig. 3 of his patent; that in this way the requisite width and elasticity were secured in the sleeves of the Cardigan jackets, and the wrists were sufficiently narrow without any other fashioning; that the workman, while knitting the Cardigan sleeves, could have changed from the Cardigan stitch to the half Cardigan by merely changing the order of the courses which he was knitting, and with very little trouble; that the two stitches could be made on the same machine; and that it was within the skill of an ordinary knitter to knit these

two stitches on the same machine. This testimony was not noticed on the further examination of the complainant in his own behalf, and, while pressed on us by the defendant, has not been explained to us by the complainant. It seems to us to be a clear admission that all which the complainant did was to apply to an undershirt what was before well known in a Cardigan jacket,—an adaptation which was within the range of ordinary skill. The cases holding that there is no patentable novelty in this are too numerous and modern to require citation of them in this connection. On the whole, we can say no more than that the complainant's manufacture is one which shows taste and skill in his art, for which, however, he seems to have received the consequent reward by securing an extensive market for a number of years.

The complainant relies very strenuously on the claim that he was the first to put on the market shirts manufactured according to his specifications, and that they at once went into public favor, and that large quantities of them were sold. Watson v. Stevens 2 C. C. A. 500, 51 Fed. 757, gave effect to facts of this character; but the case was distinctly stated to be one "of doubt" and "closely balanced," and the improved machine there in question was accepted by manufacturers who had use for it, and who could judge understandingly of its value. Touching propositions of this character, the decisions of the supreme court of late have been so numerous that we need not refer to them specifically. It is sufficient to say that they do not admit facts of this character, except when the cases are otherwise doubtful, nor unless enough is shown, in addition to the mere fact of extensive sales, to enable the court to judge whether they arose from the intrinsic nature of the alleged invention or otherwise. The case at bar meets none of these conditions. Bill dismissed, with costs.