## O. K. JELKS & SON et al. v. TOM HUSTON PEANUT CO.

### No. 6128.

Circuit Court of Appeals, Fifth Circuit.
Aug. 24, 1931.

Rehearing Denied Sept. 16, 1931.

SIBLEY, Circuit Judge, dissenting in part.

Wm. D. Jones, Jr., of Jacksonville, Fla., Paul Eaton, of Charlotte, N. C., and Charles R. Fenwick and Melville Church, both of Washington, D. C. (Blount & Jones, of Jacksonville, Fla., on the brief), for appellants and cross-appellees.

Harold Hirsch, of Atlanta, Ga., J. L. Stackpole, of Boston, Mass., L. B. Mann, of Chicago, Ill., Walter F. Rogers, of Jacksonville, Fla., and J. Madden Hatcher, of Columbus, Ga. (Hatcher & Hatcher, of Columbus, Ga., on the brief), for appellee and cross-appellant.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

Tom Huston, a citizen of Georgia, brought a suit in equity against O. K. Jelks & Son, a partnership composed of Oliver Kibbee Jelks and Donald Kibbee Jelks, citizens of Florida, and against the individual partners, to enjoin infringement of United States letters patent No. 1,603,207, issued to the said Tom Huston on October 12, 1926; to enjoin unfair competition in the business of selling salted peanuts; and for damages. Later, the Tom Huston Peanut Company, a Georgia corporation, was substituted as plaintiff. The parties will hereafter be referred to respectively as plaintiff and defendants. After a hearing, a decree was entered by the District Court, without a written opinion, maintaining the validity of the patent, granting an injunction to prevent infringement, and referring the question of damages to a master. The claim based on alleged unfair competition was dismissed. Defendants have appealed from the decree declaring infringement, and plaintiff has filed a cross-appeal on the question of unfair competition. It is unnecessary to consider the assignments of error on either the appeal or cross-appeal in detail.

The patent in suit, United States No. 1,-603,207, is for a paper bag and seal designed for the vending of salted peanuts. Infringement is alleged of claims 1, 2, and 3. These claims are as follows:

"1. A long, slender display bag for loose bulk edibles, made of transparent paper, the bag in length being longer than the width of a man's palm so as to project substantially from the grasping hand, the bag in width being narrow enough for insertion into the mouth, whereby its end joints are reduced to a practical minimum in length and are removed from the greater mass of the bulk contents of the bag so as to be substantially protected from stresses due to pressure on said mass applied to an intermediate portion of the bag, and means to close the ends of the filled bag.

"2. A display bag according to claim 1, in which the bag is formed flat with its ends sealed flat, thereby to adapt it to hold the bulk contents thereof away from its end joints to protect them when the filled bag is shipped.

"3. A receptacle for toasted peanuts and like bulk edibles, comprising an elongated bag formed of translucent paper and made narrow enough to be embraced within a hand clasp, long enough to project at both ends from the grasping hand, and small enough to have its opened end introduced into the mouth to directly discharge its contents thereinto."

**6**

Defendants denied infringement and alleged want of invention, ·anticipation by prior inventions, prior public use, description in printed publications, and prior patents. Defendants substantially allege that claims 1, 2, and 3 are indefinite and that the patent is invalid because claim 3 was allowed on a supplemental application which was not verified by oath.

In the case of Huston v. Barrett (C. C. A.) 23 F.(2d) 907, we had occasion to consider the patent in suit and held that it was prima facie valid. What was then said need not be repeated. If the patent is valid, there is no doubt whatever that it is infringed by defendants, as the bag used by them is an exact copy of the bag manufactured and used by plaintiff as described and claimed in the patent.

■ To support the contention that the patent is invalid because the application of claim 3 was not supported by oath, defendants rely upon the case of Stewart v. American Lava Co., 215 U. S. 161, 30 S. Ct. 46, 54 L. Ed. 139. That case is not in point, as it appears that the entire validity of the patent depended upon an amendment incorporated in a new specification which was not verified. That condition is not shown in this case. The amendment was clearly within the scope of the original application and therefore was valid without an additional oath. De La Vergne Machine Co. v. Featherstone, 147 U. S. 209, 13 S. Ct. 283, 37 L. Ed. 138.

■■ It is contended that the patent itself gives no exact dimensions of the bag and that describing it as "a long, slender bag," "longer than the width of a man's palm," "long enough to project at both ends of a grasping hand," is too indefinite; that the width of a man's hand may vary greatly. We think the description of the size of the bag is sufficiently definite. Necessarily there is an average width for the hands of men, and in describing such an article it was not necessary to do so with particularity in terms of measurement. If the description is sufficient to permit the manufacture of the bags, the patent is not void for indefiniteness. Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

On the question of anticipation there is evidence tending to show that various bag manufacturing companies had manufactured bags of transparent paper prior to plaintiff's patent and that bags identical with plaintiff's could have been made; that orders were received by the Union Bag &amp; Paper Corporation, a very large manufacturer of bags, in 1920 for bags made of white glassine paper, long and narrow, and of dimensions sufficiently the same as plaintiff's bags to serve the same purpose. However, it is not shown·that the bags were actually put in use, that any of them were hermetically sealed by the seal described in the patent as part of the invention, that they were used for the marketing of peanuts or other edibles, or that they were moisture proof. As the witness testifying to these orders gave the names of the parties to whom the bags were sold, this further evidence could have been readily obtained, if it existed. This evidence is not sufficient to show anticipation.

The most serious attempt to show anticipation comes from witnesses testifying as to the use of similar bags by the Planters' Nut &amp; Chocolate Company in 1912. The Planters' Company is a very large dealer in salted peanuts and, after plaintiff's package was put on the market, adopted it. They are also interested in the defense of the suit and are contributing to the expense thereof. The evidence tends to show that in 1912 the Planters' Company put out salted almonds in boxes having six compartments, each containing two transparent bags designed to sell for ten cents each. The compartments of the boxes were a little less than five inches long and a little less than two inches wide. Necessarily the bags were smaller.

■ The testimony of the secretary and treasurer of the Planters' Company is to the effect that in 1910, 1911, and 1912, the Planters' Company sold from ten thousand to fifteen thousand boxes of these salted almonds per month, and that the package was discontinued in 1914 or 1915 owing to the increased cost of materials incident to the war. This was corroborated to some extent by other witnesses. However, the witnesses failed to produce a single record showing either a sale or shipment of these packages. In explanation it was said that sales records are kept for only a limited time. On the other hand, it was shown that in the factory where these packages originated only four girls were employed to do the packing. The Planters' Company deals largely in candy and other kinds of nuts. The bags were not purchased from a manufacturer, but were made by hand by the girls who did the packing. Only 250 empty boxes were bought from the box manufacturer at a total cost of $12, probably the minimum amount the factory would manu-

facture. This box factory kept records, but the only record produced was for the 250 boxes. An inference may be drawn from the testimony regarding the packing and sale of these almonds that it was unprofitable from the beginning. As each box contained twelve bags, there would be required from 120,000 to 180,000 bags per month to effect the sales testified to by the secretary. It is hardly possible that four young women making these bags by hand, in connection with their other work, could have manufactured the great number of bags necessary. The testimony as to the volume of business of salted almonds is not at all convincing. If the evidence on this alleged anticipation establishes anything, it shows at most an abandoned experiment. Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153. It is well settled that where a defendant relies upon oral testimony to show anticipation it must be clear and convincing beyond reasonable doubt. The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154. The evidence in the record fails to meet that test.

At the time the Planters' Company decided to put out their salted almonds in transparent packages, they had prepared a loose leaf for their trade catalogue called the "See-Thru" book. Some 3,000, or perhaps 10,000, copies of this leaflet were printed. There is testimony tending to show that they were distributed to the trade. However, notwithstanding the great quantity of leaflets printed, only four of the "See-Thru" booklets containing them were produced on the trial. Three of these were in the hands of agents of the Planters' Company and the other one in the hands of the printer. The defense of anticipation by prior publication rests entirely on this trade catalogue. The rule is well settled that invalidity of a patent by reason of prior publication cannot be shown unless the description and drawings contained in the publication exhibit a substantial representation of the patented article in such full, clear, and exact terms as to enable any person skilled in the art to which it appertains to construct the invention to the same practical extent that he would be enabled to do if the information were derived from a prior patent. Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064. The publication relied on consists of a picture of a paper box, with the top elevated, and showing six compartments with almonds in transparent bags. No dimensions are given in the picture, and it would be impossible to obtain them by attempting to scale it. All that it shows is a transparent bag apparently about twice as long as it is wide. The dimensions might be anything. If this catalogue sheet was in fact distributed to the trade, which is exceedingly doubtful as the amount printed is not conclusive, it is not sufficient to show anticipation of the patent by previous publication.

As showing a prior patent, defendants rely upon United States patent No. 892,074, issued to Amedeo Obici, June 30, 1908. This patent is not in any way an anticipation of the Huston patent. It is for a double bag for the vending of salted peanuts and like edibles, the inner bag being made of moisture proof material. It is not an anticipation of the Huston patent, but serves to show that even at that early date the trade was looking for and anxious to have a moisture proof package for salted nuts.

With regard to the novelty and usefulness of plaintiff's invention, the testimony shows without dispute that prior to the issuance of the patent salted peanuts for the retail trade were packed loose in tin canisters. Some times these canisters contained a number of paper bags and a tin measure holding five cents worth. Some times the peanuts were packed first in bags, more or less square in shape, transparent or otherwise, and packed in tin canisters. If packed in paper bags, the paper bags had a tendency to break in shipment, scattering the peanuts and causing loss to the dealer. Peanuts packed this way were subject to deterioration from moisture, attracted by the salt, and soon became stale and unsalable. After Huston's invention, and when he began to put his peanuts on the market packed in long, narrow bags, it was found that they kept fresh for a long period. They were packed on end in tin canisters. The bag had sufficient strength so that it did not break in shipment. They were attractively displayed on the counters of retail venders in glass jars. After the adoption of the package, plaintiff's business increased greatly. In 1926 he sold 603,000 cartons, each containing 20 five-cent packages; in 1927, 1,824,000; in 1928, 2,107,000; and for the first eight months of 1929 he sold 1,796,000. Of course, these sales were stimulated by advertisement, but it is apparent that advertisement would not have been effective unless the package was an improvement over the previous custom. After plaintiff's package was put on the market, practically every other salted peanut packer abandoned his previous methods of distribution and adopt-

ed packages practically identical with plaintiff's. Huston's package was referred to in trade journals such as the "Peanut Vender" and the "Peanut Journal" as a unique and out of the ordinary package. There are some thirty-two dealers who have made settlements with plaintiff or agreed to discontinue infringement.

Invention presents a matter of fact. That the discovery is simple does not deprive it of patentability. In Hobbs v. Beach, 180 U. S. 383, 21 S. Ct. 409, 45 L. Ed. 586, the patent sustained was for a machine to reinforce the corners of paper boxes which had previously been done by hand. There is no doubt that Huston's invention showed a distinct and substantial improvement on the prior art of packing and vending salted peanuts. Doubtless the seal is a distinct advantage. General acceptance and adoption by the trade is evidence of novelty and usefulness. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. We entertain no doubt that the patent in suit is valid.

On the question of unfair competition the comparison of packages shows great similarity. They are of the same size and made of the same material, and defendants' package is closed with a seal very similar to plaintiff's. An attempt has evidently been made to avoid liability by printing the name "Jelks' Primrose Toasted Peanuts" on defendants' bag, while plaintiff's package has "Tom's Toasted Peanuts" printed on both sides of the seal. Plaintiff's color scheme is red and blue, and these same colors are adopted by defendants. There is sufficient similarity in the appearance of the two packages to cause confusion to the casual purchaser. In addition, there is the testimony of four witnesses that they had asked for "Tom's Peanuts" at retail stands and that Jelks' peanuts had been handed them without their immediately discovering the substitution. We think the evidence establishes a case of unfair competition.

The judgment appealed from is affirmed on direct appeal, reversed on the cross-appeal, and the case is remanded for further proceedings not inconsistent with this opinion.

SIBLEY, Circuit Judge (dissenting).

As detailed in the majority opinion, Huston has made an attractive peanut package, and both by the excellence of his product and his ingenious methods of distribution and exhibit has acquired a good reputation for it. Jelks has imitated the package in color, shape, and material, and in the mode of its exhibit so closely as likely to cause confusion of the two products and amount to unfair competition. I agree that Huston is entitled to protection on this ground. But the first three claims of his bag patent quoted in the opinion are, I think, clearly without patentable merit. The patent is not for a peanut package or a seal, but for a bag only, to be used for any edible. A monopoly is claimed by him on making, selling, and using bags of the sort stated in these claims. We have no right to enlarge or to narrow the claims in order to sustain them, but must consider them as they are. Claims 1 and 3 are quite similar, the elements claimed being an elongated, transparent bag, longer than a man's hand is wide, and narrow enough to be grasped in the hand and inserted in the mouth. The statements that the contents are to be poured into the mouth and that the size of the end joints is reduced are utility arguments, but add nothing to the claimed elements. Claim 2 adds as an element a method of manufacture, to wit, made flat like an envelope. This mode of manufacture according to the record and by common knowledge is the original, usual, and cheapest way to make a small paper bag. No one claims any patentable novelty for that idea. So claim 2 may be put aside. As to claims 1 and 3, the record demonstrates, and the specifications for this very patent admit, that the use of transparent and translucent paper in display bags for edibles is old. There is therefore no possible novelty left but the idea of making a bag small enough to be grasped by the hand and to go into the mouth, and longer than a hand-breadth—presumably as much longer as is necessary to hold the desired quantity of edible. Now the idea of eating or drinking direct from a container is as old, doubtless, as the use of containers. We have been drinking out of bottles, and even out of paper envelopes in the sleeping cars, for many years before Huston's patent. That it was invention to apply the idea to peanuts I will not admit. Huston uses a bag 1¾ x 6 inches, a well-proportioned, attractive package; but he has not patented its design. His patent seems to rest on mere dimension, yet he has really specified no dimensions. Experiment with an average hand and mouth will show that an envelope as much as three inches wide will make a cylinder a little less than two inches in

diameter which can be readily grasped by the hand and inserted in the mouth; and the average hand-breadth is about four inches. It follows that any bag three inches wide or under, and four inches long or longer, is within this patent, and if the patent is upheld cannot be used by another than Huston. If his idea were patentable, there is no perfected invention in establishing these loose limits of size. While Huston has made a commercial success of peanuts, it is due to advertising, salesmanship, and a good product in the bag, and not to the fact that the bag is less than three inches wide and more than four inches long.

Just as clearly the patent is defeated by prior publication and prior use. The Plantters' Company's catalogue showing its "See-Thru" products put up in transparent paper sacks of retail size was undoubtedly printed and circulated among their trade in 1912. A catalogue, though not a library book, is a publication within the patent law. Imperial Glass Co. v. Heisey (C. C. A.) 294 F. 267; Jockmus v. Leviton (C. C. A.) 28 F. (2d) 812. The ten-cent almond packages there illustrated look to be very much the size and proportions of Huston's bag. The almonds shown in them and plainly visible in the pictures of the packages are as good a standard of measurement as a man's mouth or hand. The bags are thus shown as about two almonds length wide and about five long. And these and many other transparent bags less than three inches wide and more than four inches long were made and used by the Planters' Company in their business for ten years before this patent was applied for. Prior use by a single person in this country prevents Huston being the inventor. Twentieth Century Co. v. Loew Mfg. Co. (C. C. A.) 243 F. 373; Egbert v. Lippmann, 104 U. S. 333, 26 L. Ed. 755. Mere samples which were never used are sufficient. Dalby v. Lynes (C. C.) 64 F. 376. If we put out of consideration the whole range of sizes which Huston has patented, and look only to the size which he is using for peanuts, and thus confine ourselves to the almond bags, they show a clear prior public use for several years. They were no abandoned experiment. They ceased to be used in 1915, not for any imperfection in the bag, but only because the almonds could no longer be bought reasonably to be put into them. Sixteen witnesses, most of them having no financial interest in this controversy, testified to these transactions of the Planters' Company, and their testimony being uncontradicted, ought not to be set aside because the catalogues and paper bags were perishable and have perished.

The former decision of this court merely held that the presumption of validity saved this patent from condemnation without a hearing. It is of no weight after the hearing. Mast-Foos Co. v. Stover Mfg. Co., 177 U. S. at page 489, 20 S. Ct. 708, 44 L. Ed. 856.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.