### EGBERT *v.* LIPPMANN.

1. Reissued letters-patent No. 5216, granted Jan. 7, 1873, to Frances Lee Barnes, executrix of Samuel H. Barnes, deceased; for an "improvement in corset-springs," are void, the invention for which the original letters, bearing date July 17, 1866, were granted, having with his consent been in public use for more than two years prior to his application for them.

2. There may be a public use of the·invention although but a single machine or device for which the letters were subsequently· granted was used only by one person.

· ·APPEAL from the Circuit Court of the United States for the Southern District of New York.·

The facts are stated in the opinion of the court.

*Mr. J. C. Clayton* and *Mr. Anthony Q. Keasbey* for the appellant.

*Mr. John B. Staples, contra.*

MR. JUSTICE WOODS delivered the opinion of the court.

This suit was brought for an alleged infringement of the complainant's reissued letters-patent, No. 5216, dated Jan. 7, 1873, for an improvement in corset-springs.

The original letters bear date July 17, 1866, and were issued to Samuel H. Barnes. · The reissue was made to the complainant, under her then name, Frances Lee Barnes, executrix of the original patentee.

The specification for the reissue declares: —

" This invention consists in forming the springs of corsets of two or more metallic plates, placed one upon another, and so connected as to prevent them from sliding off each other laterally or edgewise, and at the same time admit of their playing or sliding upon each other, in the direction of their length or longitudinally, whereby their flexibility and elasticity are greatly increased, while at the same time much strength is obtained."

The second claim is as follows: —

" A pair of corset-springs, each member of the pair being composed of two or more metallic plates, placed one on another, and fastened together at their centres, and so connected at or near each end that they can move or play on each other in the direction of their length."

The bill alleges that Barnes was the original and first inventor of the improvement covered by the reissued letters-patent, and that it had not, at the time of his application for the original letters, been for more than two years in public use or on sale, with his consent or allowance.

The answer takes issue on this averment and also denies infringement. On a final hearing the court dismissed the bill, and the complainant appealed.

As to the second defence above mentioned, it is sufficient to say that the evidence establishes beyond controversy the infringement by the defendants of the second claim of the reissue.

We have, therefore, to consider whether the defence that the patented invention had, with the consent of the inventor, been publicly used for more than two years prior to his application for the original letters, is sustained by the testimony in the record.

The sixth, seventh, and fifteenth sections of the act of July 4, 1836, c. 357 (5 Stat. 117), as qualified by the seventh section of the act of March 3, 1839, c. 88 (id. 353), were in force at the date of his application. Their effect is to render letters-patent invalid if the invention which they cover was in public use, with the consent and allowance of the inventor, for more than two years prior to his application. Since the passage of the act of 1839 it has been strenuously contended

that the public use of an invention for more than two years before such application, even without his consent and allowance, renders the letters-patent therefor void.

It is unnecessary in this case to decide this question, for the alleged use of the invention covered by the letters-patent to Barnes is conceded to have been with his express consent.

The evidence on which the defendants rely to establish a prior public use of the invention consists mainly of the testimony of the complainant.

She testifies that Barnes invented the improvement covered by his patent between January and May, 1855; that between the dates named the witness and her friend Miss Cugier were complaining of the breaking of their corset-steels. Barnes, who was present, and was an intimate friend of the witness, said he thought he could make her a pair that would not break. At their next interview he presented her with a pair of corset-steels which he himself had made. The witness wore these steels a long time. In 1858 Barnes made and presented to her another pair, which she also wore a long time. When the corsets in which these steels were used wore out, the witness ripped them open and took out the steels and put them in new corsets. This was done several times.

It is admitted, and, in fact, is asserted, by complainant, that these steels embodied the invention afterwards patented by Barnes and covered by the reissued letters-patent on which this suit is brought.

Joseph H. Sturgis, another witness for complainant, testifies that in 1863 Barnes spoke to him about two inventions made by himself, one of which was a corset-steel, and that he went to the house of Barnes to see them. Before this time, and after the transactions testified to by the complainant, Barnes and she had intermarried. Barnes said his wife had a pair of steels made according to his invention in the corsets which she was then wearing, and if she would take them off he would show them to witness. Mrs. Barnes went out, and returned with a pair of corsets and a pair of scissors, and ripped the corsets open and took out the steels. Barnes then explained to witness how they were made and used.

This is the evidence presented by the record, on which the

defendants rely to establish the public use of the invention by the patentee's consent and allowance.

The question for our decision is, whether this testimony shows a public use within the meaning of the statute.

We observe, in the first place, that to constitute the public use of an invention it is not necessary that more than one of the patented articles should be publicly used. The use of a great number may tend to strengthen the proof, but one well-defined case of such use is just as effectual to annul the patent as many. *McClurg* v. *Kingsland*, 1 How. 202; *Consolidated Fruit-Jar Co.* v. *Wright*, 94 U. S. 92; *Pitts* v. *Hall*, 2 Blatchf. 229. For instance, if the inventor of a mower, a printing-press, or a railway-car makes and sells only one of the articles invented by him, and allows the vendee to use it for two years, without restriction or limitation, the use is just as public as if he had sold and allowed the use of a great number.

We remark, secondly, that, whether the use of an invention is public or private does not necessarily depend upon the number of persons to whom its use is known. If an inventor, having made his device, gives or sells it to another, to be used by the donee or vendee, without limitation or restriction, or injunction of secrecy, and it is so used, such use is public, even though the use and knowledge of the use may be confined to one person.

We say, thirdly, that some inventions are by their very character only capable of being used where they cannot be seen or observed by the public eye. An invention may consist of a lever or spring, hidden in the running gear of a watch, or of a rachet, shaft, or cog-wheel covered from view in the recesses of a machine for spinning or weaving. Nevertheless, if its inventor sells a machine of which his invention forms a part, and allows it to be used without restriction of any kind, the use is a public one. So, on the other hand, a use necessarily open to public view, if made in good faith solely to test the qualities of the invention, and for the purpose of experiment, is not a public use within the meaning of the statute. *Elizabeth* v. *Pavement Company*, 97 U. S. 126; *Shaw* v. *Cooper*, 7 Pet. 292.

Tested by these principles, we think the evidence of the complainant herself shows that for more than two years before the application for the original letters there was, by the consent and allowance of Barnes, a public use of the invention, covered by them. He made and gave to her two pairs of corset-steels, constructed according to his device, one in 1855 and one in 1858. They were presented to her for use. He imposed no obligation of secrecy, nor any condition or restriction whatever. They were not presented for the purpose of experiment, nor to test their qualities. No such claim is set up in her testimony. The invention was at the time complete, and there is no evidence that it was afterwards changed or improved. The donee of the steels used them for years for the purpose and in the manner designed by the inventor. They were not capable of any other use. She might have exhibited them to any person, or made other steels of the same kind, and used or sold them without violating any condition or restriction imposed on her by the inventor.

According to the testimony of the complainant, the invention was completed and put to use in 1855. The inventor slept on his rights for eleven years. Letters-patent were not applied for till March, 1866. In the mean time, the invention had found its way into general, and almost universal, use. A great part of the record is taken up with the testimony of the manufacturers and venders of corset-steels, showing that before he applied for letters the principle of his device was almost universally used in the manufacture of corset-steels. It is fair to presume that having learned from this general use that there was some value in his invention, he attempted to resume, by his application, what by his acts he had clearly dedicated to the public.

" An abandonment of an invention to the public may be evinced by the conduct of the inventor at any time, even within the two years named in the law. The effect of the law is that no such consequence will necessarily follow from the invention being in public use or on sale, with the inventor's consent and allowance, at any time within two years before his application; but that, if the invention is in public use or on sale prior to that time, it will be conclusive evidence of

abandonment, and the patent will be void." *Elizabeth* v. *Pavement Company, supra.*

We are of opinion that the defence of two years' public use, by the consent and allowance of the inventor, before he made application for letters-patent, is satisfactorily established by the evidence.

*Decree affirmed.*

MR. JUSTICE MILLER dissenting.

The sixth section of the act of July 4, 1826, c. 357, makes it a condition of the grant of a patent that the invention for which it was asked should not, at the time of the application for a patent, " have been in public use or on sale with the consent or allowance " of the inventor or discoverer. Section fifteen of the same act declares that it shall be a good defence to an action for infringement of the patent, that it had been in public use or on sale with the consent or allowance of the patentee before his application. This was afterwards modified by the seventh section of the act of March 3, 1839, c. 88, which declares that no patent shall be void on that ground unless the prior use has been for more than two years before the application.

This is the law under which the patent of the complainant is held void by the opinion just delivered. The previous part of the same section requires that the invention must be one " not known or used by others " before the discovery or invention made by the applicant. In this limitation, though in the same sentence as the other, the word " public " is not used, so that the use by others which would defeat the applicant, if without his consent, need not be public; but where the use of his invention is by his consent or allowance, it must be public or it will not have that effect.

The reason of this is undoubtedly that, if without his consent others have used the machine, composition, or manufacture, it is strong proof that he was not the discoverer or first inventor. In that case he was not entitled to a patent. If the use was with his consent or allowance, the fact that such consent or allowance was first obtained is evidence that he was the inventor, and claimed to be such. In such case, he was not to

lose his right to a patent, unless the use which he permitted was such as showed an intention of abandoning his invention to the public. It must, in the language of the act, be *in public use* or on sale. If on sale, of course the public who buy can use it, and if used in public with his consent, it may be copied by others. In either event there is an end of his exclusive right of use or sale.

The word *public* is, therefore, an important member of the sentence. A private use with consent, which could lead to no copy or reproduction of the machine, which taught the nature of the invention to no one but the party to whom such consent was given, which left the public at large as ignorant of this as it was before the author's discovery, was no abandonment to the public, and did not defeat his claim for a patent. If the little steel spring inserted in a single pair of corsets, and used by only one woman, covered by her outer-clothing, and in a position always withheld from public observation, is a *public* use of that piece of steel, I am at a loss to know the line between a private and a public use.

The opinion argues that the use was public, because, with the consent of the inventor to its use, no limitation was imposed in regard to its use in public. It may be well imagined that a prohibition to the party so permitted against exposing her use of the steel spring to public observation would have been supposed to be a piece of irony. An objection quite the opposite of this suggested by the opinion is, that the invention was incapable of a public use. That is to say, that while the statute says the right to the patent can only be defeated by a use which is public, it is equally fatal to the claim, when it is permitted to be used at all, that the article can never be used in public.

I cannot on such reasoning as this eliminate from the statute the word *public*, and disregard its obvious importance in connection with the remainder of the act, for the purpose of defeating a patent otherwise meritorious.