# United States Court of Appeals for the Federal Circuit

---

**DELANO FARMS COMPANY, AND FOUR STAR FRUIT, INC.,**
*Plaintiffs-Appellants,*

**AND**

**GERAWAN FARMING, INC.,**
*Plaintiff,*

**v.**

**THE CALIFORNIA TABLE GRAPE COMMISSION, UNITED STATES, DEPARTMENT OF AGRICULTURE, AND THOMAS J. VILSACK, Secretary of Agriculture,**
*Defendants-Appellees.*

---

2014-1030

---

Appeal from the United States District Court for the Eastern District of California in No. 1:07-cv-01610-SEH-JLT, Judge Sam E. Haddon.

---

Decided: January 9, 2015

---

LAWRENCE M. HADLEY, McKool Smith Hennigan, P.C., of Los Angeles, California, argued for plaintiffs-

appellants.  Of counsel was BRIAN C. LEIGHTON, Law Office of Brian C. Leighton, of Clovis, California.

JOHN J. FARGO, Director, Intellectual Property Staff, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees United States, Department of Agriculture, and Thomas J. Vilsack.  With him on the brief was STUART F. DELERY, Assistant Attorney General.

THOMAS G. SAUNDERS, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, argued for defendant-appellee the California Table Grape Commission.  With him on the brief were SETH P. WAXMAN, BRIAN M. BOYNTON, and FRANCESCO VALENTINI.

———————————

Before PROST, *Chief Judge,* BRYSON and HUGHES, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This appeal involves a challenge to the validity of two plant patents for varieties of table grapes developed by the U.S. Department of Agriculture ("USDA") and licensed to the California Table Grape Commission.  The plaintiffs filed suit against the USDA and the California Table Grape Commission, seeking to invalidate the patents on the ground that the two grape varieties were in public use more than one year before the applications for both plant patents were filed, and that the patents are therefore invalid under the public use bar of 35 U.S.C. § 102(b) (2006).

The United States District Court for the Eastern District of California initially ruled that sovereign immunity barred this action against the USDA, and that the case could not go forward without the USDA as a party.  On appeal, we reversed the district court's ruling as to the

sovereign immunity issue, holding that the Administrative Procedure Act waives sovereign immunity for purposes of an action such as this one. *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337 (Fed. Cir. 2011).

On remand, the district court granted partial summary judgment for the defendants on matters that are not at issue on appeal. The court held a bench trial on the remaining question whether the actions of two individuals who obtained samples of the two patented plant varieties in an unauthorized manner and planted them in their own fields constituted an invalidating public use of the plant varieties. The district court found that the actions of those individuals did not constitute a public use of the two plant varieties and therefore rejected the plaintiffs' challenge to the patents. We affirm.

I

The patented table grape varieties at issue in this case are known as Scarlet Royal (U.S. Patent No. PP16,229), and Autumn King (U.S. Patent No. PP16,284). The USDA, as owner of the patents, has exclusively licensed the patents to the California Table Grape Commission, an agency of the State of California. The Commission sublicenses the patents to grape growers in California and collects royalties that are shared by the Commission and the USDA. The licensing agreements with the growers require the growers to pay a royalty on the grapes produced by plants of the patented varieties, and they prohibit the growers from propagating the plants.

The three plaintiffs are all California grape growers who purchased grapevines covered by the patents, signed license agreements with the California Table Grape Commission, and paid the Commission's licensing fee. They brought this action challenging the validity and enforceability of the plant patents, as well as the conduct

of the Commission and the USDA in licensing and enforcing the patents.

Following the bench trial, the district court made detailed findings of fact. The court's findings, and the evidence at trial that supported those findings, are summarized below.

The applications that resulted in the plant patents covering Scarlet Royal and Autumn King were filed on September 28, 2004. The "critical date" for the public use bar of 35 U.S.C. § 102(b) (2006), i.e., the beginning date of the one-year period before which a public use would invalidate the patents, is therefore September 28, 2003. Both varieties were made commercially available on July 13, 2005.

Jim Ludy, a California grape grower, cultivated table grapes at J&J Ludy Farms, in Delano, California, with his brother, Jack Ludy, from 1976 to 2003. Larry Ludy, Jim Ludy's first cousin, also cultivated table grapes at various properties in the area.

On August 22, 2001, the USDA held an experimental variety open house at the California State University, Fresno. At the open house, USDA representatives displayed several unreleased table grape varieties, including Scarlet Royal and Autumn King. Only the mature fruit from the varieties was on display, not other plant material such as the vines or wood. Visiting growers were not permitted to take any plant material relating to the unreleased varieties or even view the plants in the field.

Both Jim Ludy and Larry Ludy attended the August open house. While they were there, the Ludy cousins spoke with Rodney Klassen, who was employed by the USDA at the facility where the Scarlet Royal and Autumn King varieties were being developed. Jim Ludy asked Mr. Klassen if Mr. Klassen could give him some of the plant material for the Scarlet Royal and Autumn King varieties.

Mr. Klassen had previously given Jim Ludy plant material for other unreleased table grape varieties.  Mr. Klassen was not authorized to provide Jim Ludy with any unreleased plant material.

Despite his lack of authority, Mr. Klassen informed Jim Ludy that he would "take care" of him.  Subsequently, in early 2002, Mr. Klassen met with Jim Ludy and gave him plant material for multiple, unreleased varieties, including Scarlet Royal and Autumn King.  Mr. Klassen instructed Jim Ludy not to let the material "get away from [him]" and not to "put them in a box," which Jim Ludy understood to mean that he should not sell the resulting grapes until the varieties were commercially released.  Jim Ludy understood that he was to keep the plant material secret.  He did not want other growers to obtain the same unreleased plant material he had, and he knew that Mr. Klassen would be in "big trouble" if his actions were discovered.  Jim Ludy subsequently testified falsely under oath to protect Mr. Klassen's identity as the person from whom he had obtained the plant material for the unreleased varieties.

After receiving the plant material from Mr. Klassen, Jim Ludy grafted fewer than 50 vines of each of the Scarlet Royal and Autumn King varieties in early 2002.  Jim Ludy also provided "a few buds" of Scarlet Royal and Autumn King to his cousin, Larry Ludy.  Larry Ludy knew that the material had originally come from a USDA facility and had not yet been released.  He admitted that Jim Ludy told him that they should "keep it to ourselves."  Jim Ludy testified that it was understood between the two of them that their possession of the Scarlet Royal and Autumn King varieties "was supposed to be a secret" and that Larry Ludy would keep his possession of the plant material confidential.

Larry Ludy subsequently grew eight plants of Scarlet Royal and 25 plants of Autumn King.  In 2003, Larry

Ludy grew additional plants by grafting wood from the original group of plants, producing a total of 108 vines of Scarlet Royal and 650 vines of Autumn King.

Most of the plantings by both Ludys prior to the patents' critical date bore no usable fruit, and the Ludys sold no grapes from those plantings prior to the critical date. Neither of the Ludys provided plant material to any other persons until after the critical date. Although the various plantings were visible from publicly accessible roads, none of the vines were marked or labeled in any way, and the evidence showed that the particular variety of the grapes could not be readily ascertained from simply viewing the vines.

The only other person who was informed of the Ludys' possession of the unreleased plant material was Richard Sandrini, who had long served as a table grape marketer for Jim and Larry Ludy.

Larry Ludy showed Mr. Sandrini vines of the unreleased varieties at least twice prior to the patents' critical date. After the critical date, Mr. Sandrini sold Larry Ludy's 2004 harvest of Autumn King (the first sale of either unreleased variety), but he labeled the grapes as "Thompson Seedless" to avoid detection. Additionally, after the patents' critical date Larry Ludy provided Mr. Sandrini with wood from which Mr. Sandrini could graft Autumn King on his own property. Larry Ludy testified that he knew it was a "huge competitive advantage" to have grapes that sold at a significant premium before other growers. Mr. Sandrini likewise recognized the competitive advantage inherent in possessing the unreleased plants and intended to grow his own Autumn King grapes.

Based on the findings summarized above, the district court held that the plaintiffs failed to meet their burden of showing, by clear and convincing evidence, that the Ludys' use of the unreleased varieties constituted a public

use that invalidated the patents under 35 U.S.C. § 102(b) (2006).  The plaintiffs appeal.

## II

### A

An applicant may not be granted a patent for an invention that was "in public use . . . in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (2006).  Following a bench trial, as in this case, "the district court's conclusion on public use under § 102(b) is subject to review as a question of law while the facts underlying the conclusion on public use are subject to the clearly erroneous standard of review." *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1266 (Fed. Cir. 1986).  "The proper test for the public use prong of the section 102(b) statutory bar is whether the purported use was accessible to the public or was commercially exploited." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005).

Our case law defines the contours of what it means to be "accessible to the public."  The principal policy underlying the statutory bar is to prevent "the removal, from the public domain, of inventions that the public reasonably has come to believe are freely available." *Tone Bros. v. Sysco Corp.*, 28 F.3d 1192, 1198 (Fed. Cir. 1994).  The question in a case such as this one is thus whether the actions taken by the inventor (or, as in this case, a third party) create a reasonable belief as to the invention's public availability.

Factors that we have previously identified as being helpful in analyzing that question include "the nature of the activity that occurred in public; the public access to and knowledge of the public use; [and] whether there was any confidentiality obligation imposed on persons who observed the use." *Bernhardt, L.L.C. v. Collezione Europa*

*USA, Inc.*, 386 F.3d 1371, 1379 (Fed. Cir. 2004), quoting *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995).  The last factor captures "the commonsense notion that whether an invention is 'accessible to the public' . . . depends, at least in part, on the degree of confidentiality surrounding its use: '[A]n agreement of confidentiality, or circumstances creating a similar expectation of secrecy, may negate a public use where there is not commercial exploitation.'"  *Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013), quoting *Invitrogen*, 424 F.3d at 1382.

The analysis is similar when the allegedly public use is performed by an unaffiliated third party rather than the inventor.  "Third party prior use accessible to the public is a section 102(b) bar."  *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005).  In order to be invalidating, such use must still be publicly accessible; "secret or confidential third-party uses do not invalidate later-filed patents."  *Dey*, 715 F.3d at 1355.  The adequacy of any confidentiality guarantees are measured in relation "to the party in control of the allegedly invalidating prior use."  *Id.* at 1358.  The actions of an unaffiliated third party acting in secret are evaluated as if he stood in the place of the inventor.

With these principles in mind, we turn to their application to the facts found by the district court.

B

The appellants argue that the cultivation of the unreleased varieties by Jim Ludy and Larry Ludy constituted public use.  They point to previous opinions of this court in which the court has held third-party uses of an invention to be invalidating when, for example, "the third party 'made no attempt to maintain confidentiality or to deliberately evade disclosure'; made no 'discernible effort to maintain the [invention] as confidential'; or 'made no efforts to conceal the device or keep anything about it

secret.'" *Dey*, 715 F.3d at 1355 (citations omitted).  As evidence of the Ludys' lack of effort to maintain secrecy regarding their possession of the Scarlet Royal and Autumn King plant varieties, the appellants point to Jim Ludy's provision of plants to Larry Ludy, Larry Ludy's sharing of information with Mr. Sandrini, and the lack of concealment of the vines at either of the Ludys' farms.

The appellants first argue that Jim Ludy's provision of plant material to his cousin Larry Ludy resulted in public use.  This argument relies primarily on the Supreme Court's nineteenth century decision in *Egbert v. Lippmann*, 104 U.S. 333 (1881).  In that case, the Court ruled that the inventor of a type of corset steel who gave two of the corset steels to a friend for use 11 years before applying for a patent on the device had put the invention into public use, resulting in the invalidation of the patent.  The Court held in that case that "[i]f an inventor, having made his device, gives or sells it to another, to be used by the donee or vendee, without limitation or restriction, or injunction of secrecy, and it is so used, such use is public, even though the use and knowledge of the use may be confined to one person." *Id.* at 336.

Although the inventor of the plant varieties in this case did not give or sell the invention to anyone, Jim Ludy obtained control over the unreleased varieties.  The appellants argue that for purposes of the public use doctrine, Jim Ludy therefore stands in place of the inventor.  They contend that if Jim Ludy gave Larry Ludy the unreleased plant material "without limitation or restriction, or injunction of secrecy," Larry Ludy's subsequent cultivation of the plants would be an invalidating public use of the inventions.

The problem with the appellants' argument is that it is squarely contrary to the district court's findings of fact.  Larry Ludy was present during and participated in Jim Ludy's conversation with Mr. Klassen and knew that Mr.

Klassen did not have the authority to provide the Ludys with unreleased varieties. When Jim Ludy gave Larry Ludy the plants, Jim Ludy explicitly told his cousin to "keep [knowledge of the plants] to ourselves" and expected the fact of their possession of the plants to remain private. After the critical date, Larry Ludy allowed Mr. Sandrini to sell the fruit of the unreleased vines under a different name to avoid detection. Moreover, during a deposition in this case, Larry Ludy refused to identify Mr. Klassen as the source of the Ludys' unreleased plants; he acknowledged at that time that the information "should be confidential and not out in the public domain." The findings of the district court clearly establish, therefore, that both Ludys knew that they were not authorized to have the plants and that they needed to conceal their possession of the plants.

To the extent that the appellants' argument as to Larry Ludy is based on the lack of an explicit confidentiality agreement between the cousins, "[w]e have never required a formal confidentiality agreement to show non-public use." *Dey*, 715 F.3d at 1357; *see also Moleculon*, 793 F.2d at 1266 ("[T]he presence or absence of [an express confidentiality] agreement is not determinative of the public use issue."). Instead, we evaluate whether there were "circumstances creating a similar expectation of secrecy." *Invitrogen*, 424 F.3d at 1382.

The Supreme Court's decision in *Egbert* turned on the inventor's lack of any effort to maintain control over the use of his invention. The facts of this case, by contrast, show that Jim Ludy sought to maintain control of the plants he obtained from Mr. Klassen. Although Jim Ludy shared the plants with his cousin, the evidence showed that Larry Ludy was aware of the need to keep the plants secret, and at Jim Ludy's urging, Larry Ludy continued to treat his possession of the unreleased varieties as confidential and non-public. This case is therefore wholly different from the Supreme Court's decision in *Egbert v.*

*Lippmann*, where the inventor himself gave the invention to a third party with no understanding or expectation that the third party would maintain secrecy as to the invention.

The appellants' second argument is that the Ludy cousins' disclosure of the unreleased plants to Mr. Sandrini constituted public use. Unlike the Ludys, however, Mr. Sandrini could not practice the inventions because he did not possess plant material until after the critical date. Instead, the appellants argue that the disclosure of the plants' existence to Mr. Sandrini demonstrates the lack of confidentiality with which the Ludys treated the unreleased varieties.

The circumstances under which the disclosure to Mr. Sandrini occurred weigh against the application of the public use bar. In similar cases, we have held that the nature of the disclosure did not give rise to a "public use." For example, in *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262 (Fed. Cir. 2008), we affirmed the district court's decision that demonstration of a prototype to "friends and colleagues" was not invalidating because the evidence supported the existence of "a general understanding of confidentiality." *Id.* at 1267-68. Similarly, in *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, we vacated a district court decision finding an invalidating public use where "access was tightly controlled," "there was an industry-wide understanding [of confidentiality]," "a breach of confidence could have serious consequences for an attendee," and "there was no effective means for the attendees to divulge the designs they viewed." 386 F.3d at 1380-81.

In this case, the district court found that Mr. Sandrini was a friend, business partner, and mentor of the Ludys. The court also found that "[e]ach [of the Ludys and Mr. Sandrini] had incentives to keep the Ludys' possession secret, creating an environment of confidentiality, [and]

[e]ach maintained tight control over who knew about the Scarlet Royal and Autumn King vines and their use." We have no reason to overturn these findings. Based on the district court's findings and our case law, the Ludys' disclosure to Mr. Sandrini that they were in possession of the unreleased plants does not qualify as an invalidating public use of the patented plant varieties.

Finally, the appellants argue that the lack of secrecy with which the Ludys cultivated the unreleased varieties mandates a finding of public use. The appellants are correct that the district court found that both Ludys grafted the plants and grew them in locations that were visible from public roads. However, the appellants ignore the district court's finding that grape varieties cannot be reliably identified simply by viewing the growing vines alone. The plantings of the unreleased varieties were extremely limited in comparison to the total cultivation of the Ludys' farms. The unreleased varieties were not labeled in any way, and the appellants introduced no evidence that any person other than the Ludys and Mr. Sandrini had ever recognized the unreleased varieties. As this court explained in the *Dey* case, 715 F.3d at 1359, "a reasonable jury could conclude that if members of the public are not informed of, and cannot readily discern, the claimed features of the invention in the allegedly invalidating prior art, the public has not been put in possession of those features." In this case, the district court, sitting as the trier of fact, came to exactly that conclusion, and the evidence supports the court's conclusion.

## C

As an alternative ground of decision, the district court found that the plaintiffs failed to satisfy their burden of proof on public use because they failed to corroborate the testimony of the Ludys and Mr. Sandrini. Because we uphold the district court's determination that the plaintiffs failed to demonstrate a public use even after admit-

ting the testimony of the Ludys and Mr. Sandrini, it is unnecessary for us to address whether that evidence was inadmissible for want of corroboration.

In addition, because the evidence at trial was sufficient to support the district court's finding that the patented plant varieties were not in public use prior to the critical date, we need not address the question whether use of invention by one who has misappropriated that invention (or obtained it through other improper means) can ever qualify as an invalidating public use. The district court properly ruled that the Ludys' use of the plant varieties at issue in this case was not public, even apart from the fact that the Ludys obtained the plant material in an unauthorized manner.

Accordingly, we affirm the district court's decision rejecting the appellants' challenge to the validity of the Scarlet Royal and Autumn King patents.

**AFFIRMED**